IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Saket Singh, M.D., Individually and in a Derivative Capacity on Behalf of Anesthesia Associates of Rock Hill, P.A., <br><br> Plaintiff, <br><br> v. <br><br> Anesthesia Associates of Rock Hill, P.A.; David J. Brenneman, M.D.; Richard L. Richter, M.D.; Mark T. Hooten, M.D.; and Douglas J. Forrester, M.D., <br><br> Defendants. | C/A. No. 0:25-cv-0696-CMC-SVH <br><br><br> **Order** |

This matter is before the court on two motions: (1) a motion to remand filed by Saket Singh, M.D. ("Singh"), and (2) a motion to dismiss or, in the alternative, to stay the action and compel arbitration filed by Anesthesia Associates of Rock Hill, P.A. ("AARH") and the individual Defendants. ECF Nos. 9, 12. Magistrate Judge Shiva V. Hodges entered a Report and Recommendation ("Report") addressing both motions on March 30, 2025. ECF No. 19. For the reasons explained below, the court adopts the Report as modified, grants Defendants' motion to compel arbitration, and denies Singh's motion to remand as moot.

## BACKGROUND

Singh, an anesthesiologist with "over two decades of professional experience," joined AARH in early 2019. ECF No. 1-2 at ¶¶ 11, 12. In April 2021, he became one of six co-equal shareholders in the practice. *Id.* at ¶ 14. During his time at AARH, Singh served as Chief of Anesthesia and Chief of Cardiac Anesthesia at Piedmont Medical Center ("PMC"). *Id.* at ¶ 13.

According to the complaint, Singh reported to AARH's board in March 2024 that PMC staff had expressed a "significant lack of confidence" in the clinical abilities of Defendant David J. Brenneman, M.D. ("Brenneman"), another AARH shareholder. *Id.* at ¶ 17. Singh claims his report to the board led to "immediate retaliation." *Id.* Brenneman allegedly threatened to "crush" him, and he was subsequently removed from his leadership roles at PMC. *Id.* A few months later, on August 1, 2024, Singh raised concerns to a fellow shareholder about roughly $2 million he believed was missing from AARH's books. *Id.* at ¶ 18. That same day, he relayed additional complaints about Brenneman's patient care to AARH's former president. *Id.* at ¶ 19. In addition to voicing concerns internally, Singh also complained to an outside consulting firm throughout 2024 about "serious problems within the practice," including discrimination, financial misconduct, poor patient care, and a toxic work environment. *Id.* at ¶ 20.

On August 12, 2024, Singh's employment with AARH was terminated effective immediately. *Id.* at ¶ 21. His termination letter stated he was being fired "with cause" but did not provide a specific reason. *Id.* The letter was accompanied by a proposed Separation and Redemption Agreement and General Release, which Singh declined to sign. *Id.* at ¶ 22. He also rejected a $10 check that AARH sent him in an effort to redeem his ten shares of stock. *Id.*

In early September, Singh's attorney sent a letter to AARH's outside counsel requesting that Singh be allowed to inspect and copy certain corporate records. *Id.* at ¶ 23. AARH denied the request because, in its view, Singh "[was] no longer a shareholder." *Id.* at ¶ 25. Soon afterward, Singh filed a single-count complaint in the York County Court of Common Pleas for a court-ordered inspection of records under the South Carolina Business Corporation Act. ECF No.

2

1-1. A week later, he moved for an expedited order allowing him to inspect and copy the requested records. ECF No. 10-2. In response, AARH filed a motion to compel arbitration. ECF No. 10-9.

The Honorable Marvin H. Dukes heard argument on both motions on October 21, 2024. ECF No. 1-3. On November 7, 2024, Judge Dukes denied AARH's motion and granted Singh's, ordering AARH to produce the records within 30 days at its own expense. *Id.* at 13. In his order, Judge Dukes determined Singh remained an AARH shareholder and found AARH had failed to produce a copy of a signed arbitration agreement covering Singh's claim. *Id.* at 2–3, 7–11. AARH filed a notice of appeal from Judge Dukes' order on November 18, 2024. ECF No. 1-4. That appeal remains pending.

In January 2025, Singh amended his complaint, adding 13 new claims and naming four AARH shareholders — Brenneman, Richard L. Richter, M.D. ("Richter"); Mark T. Hooten, M.D. ("Hooten"); and Douglas J. Forrester, M.D. ("Forrester") — as additional defendants. ECF No. 1-2. The following chart summarizes the claims asserted against each defendant:

| **Defendants** | **Counts** |
|---|---|
| AARH only | Count 1: Court-ordered inspection of corporate records under S.C. Code Ann. § 33-16-104<br>Count 3: Judicial appraisal of shares under S.C. Code Ann. § 33-19-250<br>Count 4: Race discrimination under 42 U.S.C. § 1981<br>Count 5: Retaliation under 42 U.S.C. § 1981<br>Count 6: Breach of Physician Shareholder Employment Agreement<br>Count 8: Breach of Shareholders' Agreement |
| AARH, Richter, Hooten, and Forrester | Count 7: Breach of Purchase Agreement |

3

| All Defendants (AARH, Brenneman, Richter, Hooten, and Forrester) | Count 2: Minority shareholder oppression<br>Count 9: Violation of the South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10 to -110<br>Count 10: Breach of contract accompanied by fraudulent act<br>Count 11: Breach of a third-party beneficiary contract<br>Count 12: Defamation<br>Count 14: Declaratory judgment |
|---|---|
| Richter, Hooten, and Forrester | Count 13: Derivative claim for breach of fiduciary duty |

In February, Defendants removed the case based on federal-question jurisdiction. ECF No. 1. Less than a week later, Singh moved for remand. ECF No. 9. He does not dispute the propriety of removal but asks the court to decline supplemental jurisdiction over his 12 state-law claims under 28 U.S.C. § 1367(c) and remand them to state court. ECF No. 9-1 at 8. Defendants oppose the motion, arguing the state claims do not raise "novel or complex" issues of South Carolina law or "substantially predominate" over the federal claims and that no other "compelling reasons" exist for the court to decline jurisdiction. ECF No. 15 at 3, 5, 8.

While Singh's motion to remand was pending, Defendants moved to compel arbitration. ECF No. 12. They submit Singh is obligated to arbitrate disputes arising from his employment with, and ownership interest in, AARH based on several documents, chief among them the "Physician Shareholder Employment Agreement" ("PSEA" or "Agreement"). ECF No. 12-11 at 3–4. The PSEA governed Singh's employment once he became a partner with AARH in April 2021 and forms the basis for his sixth cause of action. Although AARH has not located a signed copy of the PSEA, it has submitted what it describes as "a true and accurate copy of the version .

4

. . . [it] believes was signed." *Id.* at 5 n.7. The first page of this unsigned copy bears the title "Physician Shareholder Employment Agreement" and names "Anesthesia Associates of Rock Hill, P.A." and "Saket Singh, M.D." as the contracting parties. ECF No. 12-5 at 1. Paragraph 13 states that, with one exception, "any dispute or controversy arising under, out of, or in connection with, or in relation to this Agreement . . . shall be determined and settled by arbitration." *Id.* at 6. The final page includes blank signature lines for "Richard L. Richter, M.D., President" on behalf of AARH and "Saket Singh, M.D." *Id.* at 7.

In opposing Defendants' motion, Singh argues the Agreement falls within the statute of frauds because it includes a two-year noncompete provision. ECF No. 17 at 7; *see Davis v. Greenwood Sch. Dist. 50*, 620 S.E.2d 65, 67 (S.C. 2005) ("[T]he Statute of Frauds requires that a contract that cannot be performed within one year be in writing and signed by the parties."). And because AARH has failed to produce a signed copy of the Agreement, he continues, the arbitration provision is unenforceable against him as "the party to be charged." ECF No. 17 at 7.

The Magistrate Judge issued her Report on March 20, 2025. ECF No. 19. Based largely on Singh's admission that he "recall[s] signing a Physician Shareholder Employment Agreement . . . in April 2021[] when [he] became a partner at AARH," the Magistrate Judge found it "undisputed" Singh signed the "relevant" PSEA. *Id.* at 8–12. After finding the existence of a binding contract to arbitrate, the Magistrate Judge then considered which of Singh's claims fell within the PSEA's arbitration provision. Ultimately, she recommends the court compel arbitration as to Counts 4, 5, 6, 9, 10, 11, 12, and 14 "to the extent those causes of action concern [Singh's] termination and/or the [PSEA]." *Id.* at 18–19. She further recommends the court stay the entire

5

case pending arbitration and deny Singh's motion to remand as moot. *Id.* at 19. Singh timely objected to the Report on March 27, 2025. ECF No. 20. His objections have been fully briefed and are ready for review. ECF Nos. 21, 23.

## LEGAL STANDARD

The Report carries no "presumptive weight," and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 271 (1976). The court reviews de novo "those portions of the [R]eport . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" or "recommit the matter . . . with instructions." 28 U.S.C. § 636(b)(1). "To trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). In the absence of specific objections, the court reviews only for clear error, *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and need not give any explanation for adopting the Report, *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

# DISCUSSION

**A.     The law-of-the-case doctrine does not bar consideration of Defendants' motion.**

As an initial matter, the court rejects Singh's argument that the state-court order denying AARH's prior motion to compel arbitration binds the court as the law of the case. [1] ECF No. 17 at 1–2.  Generally, the law-of-the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *See United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815–16 (1988)); *see also* 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.22[3][c][i] (3d ed. 2025) (noting the doctrine applies equally to decisions entered by the state court prior to removal).  But the doctrine "is not an inexorable command." *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 68 (4th Cir. 1988) (internal quotation marks omitted); *Messenger v. Anderson*, 225 U.S. 436, 444 (1912) (explaining the law of the case is "not a limit to [a court's] power").  It does not "prohibit a court from revisiting an issue when there is a legitimate reason to do so, whether it be a change in circumstances, new evidence, or something the court overlooked earlier." *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 711 (7th Cir. 2016).

---

[1] Because subject-matter jurisdiction is proper, *see* 28 U.S.C. §§ 1331 and 1367, the court must consider Defendant's motion to compel arbitration first.  *See, e.g.*, *Silfee v. Auto. Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017) ("[A]fter a motion to compel arbitration has been filed, the court must 'refrain from further action' until it determines arbitrability." (quoting *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004))); *Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*, 642 F.3d 849, 856 (9th Cir. 2011) ("Because the federal court's jurisdiction was proper, it was required under the mandatory terms of the FAA to consider MGIC's motion before it remanded the suit pursuant to its discretion under the DJA.").

Here, after AARH's prior motion to compel arbitration was denied, Singh amended his complaint to assert a breach-of-contract claim based on AARH's alleged failure to abide by the terms of the PSEA. By doing so, Singh necessarily injected a new issue into the case — whether he should be allowed to claim the benefits of the PSEA while simultaneously trying to avoid its arbitration provision. *See* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478 (3d ed. 2025) ("Departures from the law of the case have been permitted in rather general terms. Perhaps the easiest circumstances involve new events, an issue that justifiably was not seen at an earlier time, a new issue injected by proper amendment of the pleadings, or new evidence adduced at a retrial directed for other reasons." (footnotes omitted)). Because this issue was not before the state court, the law-of-the-case doctrine does not constrain the court's review of Defendants' current motion.

**B.    Singh is bound by the arbitration clause in the PSEA under the theory of direct-benefits estoppel.**

Section 4 of the Federal Arbitration Act ("FAA") authorizes "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition [a] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[2]  9 U.S.C. § 4.  In ruling on a motion to compel

---

[2] The court finds unpersuasive Singh's argument that the PSEA falls outside the scope of the FAA because it does not involve interstate commerce. The phrase "involving commerce" in the FAA is "the functional equivalent of the more familiar term 'affecting commerce' — words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Brenneman represents in his affidavit that AARH "provides anesthesiology services to residents of North Carolina and South Carolina," "accepts payments from out-of-state and multi-state insurance carriers," and "receives goods from

8

arbitration, the court considers two questions: (1) whether "an arbitration agreement exists between the parties," and (2) whether "the dispute at issue falls within the scope of [that] agreement." *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001); *Muriithi v. Shuttle Express, Inc.*, 712 F.3d 173, 179 (4th Cir. 2013). If both questions are answered affirmatively, the court has "no choice but to grant [the] motion." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002); *see Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts

---

out-of-state vendors." ECF No. 12-1 at ¶ 5. These undisputed facts are sufficient to establish the PSEA falls within the FAA's reach. *See, e.g.*, *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 327 (1991) ("The provision of ophthalmological services affects interstate commerce because both physicians and hospitals serve nonresident patients and receive reimbursement through Medicare payments."); *Papaconstantinou-Bauer v. Jackson Hosp. & Clinic, Inc.*, No. 2:22cv178-MHT, 2024 WL 1158362, at *4 (M.D. Ala. Mar. 18, 2024); *OnPointe Cmty. Care LV LLC v. Charter Health Holdings, Inc.*, No. 2:22-cv-01235-GMN-DJA, 2023 WL 4549319, at *2 n.3 (D. Nev. June 20, 2023); *Montes v. San Joaquin Cmty. Hosp.*, No. 1:13-cv-01722-AWI-JLT, 2014 WL 334912, at *5 (E.D. Cal. Jan. 29, 2014); *Whitley v. Carolina Neurosurgical Assocs., P.A.*, No. 1:01–CV–00105, 2002 WL 1009721, at *2 (M.D.N.C. Feb. 6, 2002); *Crawford v. West Jersey Health Sys.*, 847 F.Supp. 1232, 1240 (D.N.J. 1994).

    Singh urges the court to follow the South Carolina Court of Appeals' decision in *Flexon v. PHC-Jasper, Inc.*, 731 S.E.2d 1 (S.C. Ct. App. 2012), which held a physician's employment agreement with a South Carolina hospital to provide medical services in Beaufort and Jasper Counties did not involve interstate commerce. The court declines to do so. *Flexon* is not binding on the court, and its reasoning has been called into question by subsequent South Carolina cases. *Marzulli v. Tenet S.C., Inc.*, No. 2015–002363, 2018 WL 1531507, at *2 (S.C. Ct. App. Mar. 28, 2018) ("Relying on *Flexon* . . . , the circuit court found the Agreement did not involve interstate commerce because Marzulli was a South Carolina resident providing services to local residents at a local facility. We find this approach too narrow and contrary to more recent decisions. *Flexon* was decided before *Cape Romain* and *Dean v. Heritage Healthcare of Ridgeway, LLC*, 408 S.C. 371, 759 S.E.2d 727 (2014), which contain the controlling approach."); *see also Dean*, 759 S.E.2d at 382 (overruling *Timms v. Greene*, 427 S.E.2d 642 (S.C. 1993), a case employing reasoning similar to *Flexon*, and describing it as "a relic of the past").

*shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (emphasis in original)).

Courts evaluate motions to compel arbitration under a summary judgment-like standard. *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019). The party seeking to compel arbitration "bears the burden of establishing the existence of a binding contract to arbitrate the dispute." *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 456 (4th Cir. 2017). The court may compel arbitration only if there are no "genuine issues of material fact regarding the existence of an agreement to arbitrate." *Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). But, if the party opposing arbitration "unequivocally denies 'that an arbitration agreement exists,' and 'show[s] sufficient facts in support' thereof," *Berkeley Cnty.*, 944 F.3d at 234 (quoting *Chorley Enters.*, 807 F.3d at 564), "the 'court shall proceed summarily' and conduct a trial on the motion to compel arbitration," *id.* (quoting 9 U.S.C. § 4).

The parties' dispute in this case centers on the PSEA. Singh acknowledges the existence of the PSEA but argues the Agreement — and specifically its arbitration provision — is unenforceable against him under the statute of frauds because Defendants have failed to produce a copy bearing his signature. ECF No. 17 at 7. Defendants counter Singh "cannot pick and choose which provisions of the [PSEA] are enforceable," asserting that if he "wishes to take advantage of any provision of the contract, he must be subject to every provision . . . , including the arbitration clause." ECF No. 18 at 4–6. The court agrees with Defendants. Even if a dispute exists over

10

whether Singh signed the PSEA,[3] the court finds he is bound by the Agreement's arbitration clause as a matter of law under the doctrine of direct-benefits estoppel.[4]

> In the arbitration context, the doctrine [of direct-benefits estoppel] recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him.

*Pearson v. Hilton Head Hosp.*, 733 S.E.2d 597, 601 (S.C. Ct. App. 2012) (emphasis removed) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000)). Direct-benefits estoppel rests on the principle that "[a] party may not rely on [a] contract when it works to its advantage[] and repudiate it when it works to its disadvantage." *Dixon v. Pattee*, 898 S.E.2d 158, 171 (S.C. Ct. App. 2023) (internal quotation marks omitted); *Long v.*

---

[3] The court need not reach the Report's finding that the "evidence is undisputed" Singh signed the Agreement. ECF No. 19 at 12.

[4] Although, as explained below, the arbitration provision delegates questions of arbitrability to the arbitrator, whether Singh may be compelled to arbitrate in the first place is for the court to decide. *See, e.g.*, *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 754 (Del. Ch. 2023) (explaining "the application of estoppel to bind a party to an arbitration agreement . . . . addresses whether an arbitration agreement exists and is always an issue for the court"); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 848 (6th Cir. 2020) (explaining "even if the agreement incorporates the AAA Rules," "the court must itself resolve [whether a nonsignatory may be compelled to arbitrate]," because "the question goes to the very existence of [a valid arbitration] agreement" (internal quotation marks omitted and second brackets in original)); *Mobile Real Estate, LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 479 (S.D.N.Y. 2020) ("While issues of arbitrability with respect to non-signatories seeking to compel arbitration may be delegated to an arbitrator, the issue of whether a non-signatory may be compelled to arbitrate is for the Court to decide."); *Silva v. Schmidt Baking Distrib., LLC*, 732 F. Supp. 194, 204 (D. Conn. 2024) ("The issue of whether nonsignatories are bound by an arbitration agreement is included within the broader issue of contract formation, and so it is an issue for courts to address.").

*Silver*, 248 F.3d 309, 320 (4th Cir. 2001) ("Allowing Long to avoid the consequences of the 1972 Agreement while invoking its benefits in a suit . . . would both disregard equity and contravene [the FAA]." (internal quotation marks omitted)).

South Carolina courts[5] have applied direct-benefits estoppel when the party opposing arbitration seeks to enforce a contract containing an arbitration clause or asserts claims that depend on the contract's terms. *See Pearson*, 733 S.E.2d at 605; *Dixon*, 898 S.E.2d at 171; *Bennett v. ACS Primary Care Physicians-Southeast P.C.*, 908 S.E.2d 110, 117–18 (S.C. Ct. App. 2024). "When a claim depends on the contract's existence and cannot stand independently — that is, the alleged liability arises solely from the contract or must be determined by reference to it — equity prevents a person from avoiding the arbitration clause that was part of that agreement." *Dixon*, 898 S.E.2d at 171 (internal quotation marks omitted).

As mentioned above, the PSEA forms the basis for Singh's sixth cause of action. He alleges AARH breached the PSEA by, among other things, failing to provide him with 90-day written notice of his without-cause termination and failing to pay him his "Termination Salary." ECF No. 1-2 at ¶ 73. In addition to actual damages, he seeks attorneys' fees and costs for these alleged breaches pursuant to Paragraph 17. *Id.* at ¶ 78. And, in Count 14, he requests a declaratory judgment invalidating the restrictive covenants contained in Paragraph 11 of the Agreement.[6] *Id.*

---

[5] State law governs whether a nonsignatory may be bound by an arbitration provision. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009).

[6] Singh continues to embrace the PSEA throughout his briefing. *See, e.g.*, ECF No. 17 at 5 (stating his "original Physician Employee Agreement . . . was expressly superseded by the Physician Shareholder Employment Agreement dated April 1, 2021"); *id.* at 8 (arguing "there is

12

at ¶ 160. Singh cannot have it both ways. Because he is attempting to enforce provisions of the Agreement that benefit him while avoiding those he finds unfavorable, he is bound by the entire Agreement, including the arbitration provision. To hold otherwise "would both disregard equity and contravene the purposes underlying enactment of the [Federal] Arbitration Act." *Dixon*, 898 S.E.2d at 171 (internal quotation marks omitted).

C.     **The PSEA's arbitration provision delegates questions of arbitrability to the arbitrator.**

Having found an agreement to arbitrate exists between the parties, the court must next determine who — the court or the arbitrator — is empowered to decide Singh's remaining arguments.[7] Ordinarily, challenges to the validity and scope of an arbitration provision contained within a broader contract (sometimes called a "container contract") are for the court to resolve. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006); *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185–86 (2019). But parties may agree to have the arbitrator decide these issues if their "[arbitration] agreement does so by 'clear and unmistakable evidence.'" *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (quoting *First Options of Chi., Inc. v. Kaplan*,

---

nothing improper in [him] suing Defendant AARH on the substantive provisions of the Physician Shareholder Employment Agreement, but denying the existence of a binding arbitration agreement under South Carolina law"); *id.* at 9 ("Clearly, the Physician Shareholder Employment Agreement deals only with Plaintiff's employment with AARH . . . ."); *id.* at 13 (arguing the arbitration provision "can be severed from the remainder of the [PSEA]").

[7] After finding the existence of a binding arbitration agreement, the Magistrate Judge proceeded to determine which of Singh's claims fell within the agreement's scope.

13

514 U.S. 938, 944 (1995)). "Such a choice is typically evidenced in a so-called 'delegation' clause or provision." *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 878 (6th Cir. 2021).

Under "substantive federal arbitration law," a delegation clause is considered an "additional, antecedent agreement," severable from the remainder of the arbitration provision and the container contract in which it is found. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70–72 (2010) (internal quotation marks omitted); *see also MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefits Funds*, 974 F.3d 386, 399 (3d Cir. 2020) ("Think of a delegation provision as a mini-arbitration agreement within a broader arbitration agreement within a broader contract, 'something akin to Russian nesting dolls.'" (quoting *Rent-A-Center*, 561 U.S. at 85 (Stevens, J., dissenting))). As a result, unless the party opposing arbitration challenges "the delegation provision *specifically*," the court "must treat it as valid" and "must enforce it," sending "any challenge to the validity" of the underlying arbitration provision or container contract to the arbitrator. *Rent-A-Center*, 561 U.S. at 72 (emphasis added); *Coinbase, Inc. v. Suski*, 602 U.S. 143, 152 (2024) ("[A]bsent a successful challenge to the delegation provision, courts must send all arbitrability disputes to arbitration.").

Against this backdrop, the court turns to the text of the arbitration provision in the PSEA. It states that "any dispute or controversy arising under, out of, or in connection with, or in relation to this Agreement . . . shall be determined and settled by arbitration . . . *in accordance with the rules of the American Arbitration Association*." ECF No. 12-5 at 6 (emphasis added). The AAA rules, in turn, expressly grant the arbitrator authority to resolve challenges to the "existence, scope, or validity" of the arbitration provision, as well as to the "validity" of the broader contract in which

14

the clause is embedded. *E.g.*, Am. Arb. Ass'n, *Employment/Workplace Arbitration Rules and Mediation Procedures*, R-7 (2025), https://www.adr.org/sites/default/files/2025_Employment_Arbitration_Rules.pdf. Courts overwhelmingly agree incorporation of the AAA rules provides "clear and unmistakable" evidence of the parties' intent to delegate arbitrability. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) ("[E]very one of our sister circuits to address the question — eleven out of twelve by our count — has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'"); *Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 527–28 (4th Cir. 2017) (holding incorporation of the "substantively identical" JAMS rules "constitute[d] clear and unmistakable evidence of the parties' intent to delegate to the arbitrator questions of arbitrability"), *abrogated on other grounds by Henry Schein*, 586 U.S. at 68. The court sees no reason to depart from this consensus.

Because Singh has not challenged the delegation clause specifically, his remaining arguments must be decided by the arbitrator. This includes his assertion the PSEA cannot be enforced against him because Defendants have not produced a signed copy. ECF No. 17 at 7; ECF No. 20 at 1–3. The statute of frauds concerns contract *enforceability*, not *formation*,[8] and therefore

---

[8] *See, e.g.*, *Howard v. Ferrellgas Partners, L.P.*, 92 F.Supp.3d 1115, 1132 (D. Kan. 2015) ("Courts have soundly held that the statute of frauds is a challenge to the enforceability of an otherwise formed agreement.") (collecting cases); *Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co.*, 641 F.Supp.2d 196, 207 (S.D.N.Y. 2009) (explaining the failure to satisfy the statute of frauds "does not mean that no contract exists" or "deprive the agreement of all effect"); *Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016) ("[T]he Statute of Frauds does not govern the formation of a contract but only the enforceability of contracts that have been formed." (internal quotation marks omitted)).

does not fall within the narrow category of issues courts may decide in the face of a valid delegation clause.[9] Nor may the court address Singh's claim that the South Carolina Uniform Arbitration Act renders the arbitration provision invalid or his argument that certain of his state-law claims are nonarbitrable. ECF No. 17 at 3–4, 13; ECF No. 20 at 5–6. Under the AAA rules incorporated into the PSEA, challenges to the scope and enforceability of an arbitration provision are expressly delegated to the arbitrator.

**D.     The court will stay the case pending arbitration.**

Section 3 of the FAA provides "upon being satisfied that [an] issue involved in [a] suit or proceeding is referable to arbitration," the district court "*shall* on application of one of the parties stay the trial of the action until [the] arbitration has been had." 9 U.S.C. § 3 (emphasis added). "This stay-of-litigation provision is mandatory." *Adkins*, 303 F.3d at 500; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). Accordingly, the court must grant Defendants' alternative request for a stay.

---

[9] *See, e.g.*, *Ahstrom v. DHI Mortg. Co.*, 21 F.4th 631, 635 (9th Cir. 2021) ("We agree with our sister circuits and hold that parties cannot delegate issues of formation to the arbitrator."); *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1104 (10th Cir. 2020) ("Courts must . . . first determine whether an arbitration agreement was indeed formed before enforcing a delegation clause therein."); *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018) ("Arguments that an agreement to arbitrate was never formed, though, are to be heard by the court even where a delegation clause exists.").

**CONCLUSION**

For the reasons set forth above, the court adopts the Report (ECF No. 19) to the extent it is consistent with this order, grants Defendants' motion to compel arbitration (ECF No. 12), and denies Singh's motion to remand (ECF No. 9) as moot.  Pursuant to 9 U.S.C. § 4, Defendants[10] are directed to proceed to arbitration in accordance with the terms of the PSEA.  This case will be stayed pending arbitration.  The parties shall file a joint status report every 90 days updating the court on the progress of arbitration.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
May 13, 2025

---

[10] The court leaves for the arbitrator whether the individual Defendants may enforce the arbitration provision in the PSEA.  *See Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 287 (4th Cir. 2023) (explaining a court must decide whether state law allows a nonparty to an arbitration agreement to enforce the agreement "*when an objection is properly raised*" (emphasis added)); *id.* at 288 (holding the district court was required to determine whether the defendant had "the right to enforce any portion of an arbitration clause to which it was not a party . . . *when that right was challenged*" (emphasis added)); *see also Henry Schein*, 586 U.S. at 69 ("[I]f a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.").

17